UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DUSTIN GRAHAM GILBERT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:24-cv-00371-JAW |
| | ) | |
| MAINE DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**OMNIBUS ORDER ON DEFENDANT'S MOTION TO DISMISS AND
PLAINTIFF'S MOTIONS TO AMEND AND TO CONTINUE**

A disabled individual alleged the Maine Department of Health and Human Services violated Title II of the Americans with Disabilities Act by depriving him of his constitutional right to vote when he was a civil inpatient at a state psychiatric center during the November 2022 election. The defendant moves to dismiss the complaint on the ground that the plaintiff's claim is not redressable. Concluding the plaintiff has established he has standing to proceed under Title II, the court dismisses the defendant's motion to dismiss.

The court further dismisses the plaintiff's motion to amend his complaint for a second time, concluding the claim he seeks to bring against a state agency pursuant to 42 U.S.C. § 1983 would be futile. Finally, the court dismisses the plaintiff's motion seeking continuance to allow for discovery on these pending motions.

## I.     PROCEDURAL HISTORY

On November 1, 2024, Dustin Graham Gilbert, acting pro se, filed a complaint against the Maine Department of Health and Human Services (Maine DHHS), alleging Maine DHHS violated the Fifteenth Amendment to the United States Constitution by depriving him of his constitutionally guaranteed right to vote while he was in the care of a state-run psychiatric hospital. *Compl.* at 4, 7 (ECF No. 1). Mr. Gilbert specifically claims that, while in civil inpatient residence at Riverview Psychiatric Center (Riverview), he requested but never received a ballot for the 2022 election.[1] *Id.* at 7.

Mr. Gilbert elected to proceed in forma pauperis, *Appl. to Proceed in Dist. Ct. Without Prepaying Fees or Costs* (ECF No. 3), and, pursuant to 28 U.S.C. § 1915(e)(2), the statute that governs matters filed without the prepayment of fees, courts are authorized to conduct a preliminary review of a complaint when a plaintiff proceeds in forma pauperis. 28 U.S.C. § 1915(e)(2). Following such a review, on December 9, 2024, the United States Magistrate Judge recommended the Court dismiss Mr. Gilbert's complaint. *Recommended Decision after Rev. of Pl.'s Compl.* (ECF No. 9) (*Rec. Dec.*). Mr. Gilbert objected to the Recommended Decision on December 19, 2024,

---

[1]     The Magistrate Judge's Recommended Decision addressing Mr. Gilbert's complaint correctly observes that the Plaintiff had not specified for which election in 2022 he requested a ballot. *Recommended Decision after Rev. of Pl.'s Compl.* at 2 n.1 (ECF No. 9) (*Rec. Dec.*). The Magistrate Judge assumed that Mr. Gilbert was referring to the November 2022 election. *Id.* In his objection, Mr. Gilbert confirmed he was a resident at Riverview at the time of the November 2022 election. *Obj. to Rep. and Recommended Decision* at 1 (ECF No. 10) (*Pl.'s Obj.*). ("When I was at R[i]verview is roughly stated as the 2022 election and that should provide enough for the Magistrate to know. It was October/November [. . .] which I planned on providing exact dates later"). Based on Mr. Gilbert's clarification, the Court concludes that he has been referring to the November 2022 election.

and raised new claims under Article I of the United States Constitution and the Americans with Disabilities Act (ADA). *Obj. to Rep. and Recommended Decision* (ECF No. 10) (*Am. Compl.*[2]). On December 23, 2024, after the order was taken under advisement, Mr. Gilbert filed additional attachments in support of his objection. *Additional Attachs.* (ECF No. 11).

On December 30, 2024, the Court affirmed in part and reversed in part the Recommended Decision and granted in part and overruled in part Mr. Gilbert's objection. *Order on Recommended Decision and Obj.* at 11-12 (ECF No. 12) (*Order on Rec. Dec. and Obj.*). The Court's order affirmed the Magistrate Judge's recommended ruling on the Fifteenth Amendment claim, as well as on the claims asserted by the Plaintiff in his objection pursuant to Article I and the ADA's employment provision. Although Mr. Gilbert failed to bring his ADA voting rights claim to the Magistrate Judge's attention, the Court reversed the Recommended Decision to the extent it recommended dismissal of Mr. Gilbert's case in its entirety and ordered that he be allowed to proceed on the claim raised in his objection for an alleged violation of the voting rights provision of Title II of the ADA. *Id.*

Maine DHHS agreed to accept service on January 30, 2025, and, on March 3, 2025, filed a motion to dismiss Mr. Gilbert's complaint, as amended by his objection, pursuant to Federal Rule of Civil Procedure 12(b)(1) for the Plaintiff's lack of standing and Rule 12(b)(6) for failure to state on claim on which relief can be granted.

---

[2] As the Court explains below, it regards Mr. Gilbert's objection, which raised new grounds to relief, as an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

*Acceptance of Serv.* (ECF No. 14); *Mot. to Dismiss of Def. Dep't of Health & Hum. Servs.* (ECF No. 17) (*Def.'s Mot. to Dismiss*). Mr. Gilbert responded in opposition on March 24, 2025. *Resp. to the State* (ECF No. 20) (*Pl.'s Dismissal Opp'n and Amend Reply*). On April 7, 2025, Maine DHHS replied. *Reply Mem. in Further Support of Mot. to Dismiss of Def. Dep't of Health & Hum. Servs.* (ECF No. 21) (*Def.'s Dismissal Reply*).

Meanwhile, on February 20, 2025, Mr. Gilbert moved to amend his complaint a second time, seeking to augment his complaint with a First Amendment claim pursuant to 42 U.S.C. § 1983. *Mot. to Amend* (ECF No. 16) (*Pl.'s Mot. to Amend*).[3] On March 10, 2025, Maine DHHS opposed Mr. Gilbert's motion on the ground that his proposed amendment would be futile. *Def. Dep't of Health & Hum. Servs.' Opp'n to Pl.'s Mot. to Amend Compl.* (ECF No. 19) (*Def.'s Opp'n to Mot. to Amend*). Mr. Gilbert replied on March 24, 2025. *Pl.'s Dismissal Opp'n and Amend Reply*.

While the Defendant's motion to dismiss and his own motion to amend were still pending, on April 9, 2025, Mr. Gilbert filed a motion to continue "for the reason of a Discovery request to the State." *Mot. for Continuance [B]ased on Disc. Req. to the Def.* at 1 (ECF No. 22) (*Pl.'s Mot. to Continue*).

---

[3]     Mr. Gilbert's motion to amend reports that he has an additional claim under "Section 1935," which he alternatively refers to as "US Code 42, Section 1935." *Pl.'s Mot. to Amend* at 1. He says: "Under US Code 42, Section 1935, state employees acting under the color of state law can[]not violate civil rights and not be liable." *Id.* On March 7, 2025, Mr. Gilbert filed a letter, docketed as an additional attachment, clarifying these statutory references were in error and he intended to refer to "US Code 42, Section 1983." *Additional Attachs.* at 1 (ECF No. 18) (emphasis in original). The Court accepts Mr. Gilbert's clarification and construes his request to amend as seeking to add a claim pursuant to 42 U.S.C. § 1983.

The Court issues this order to respond to the Defendant's motion to dismiss the Title II claim Mr. Gilbert raised in his amended complaint, the Plaintiff's motion to amend his complaint to add a First Amendment claim, and the Plaintiff's motion to continue. The Court begins by addressing the motion to dismiss.

## II.   MAINE DEPARTMENT OF HEALTH AND HUMAN SERVICES' MOTION TO DISMISS

### A.   Factual Background[4]

#### 1.   A Preliminary Note on the Scope of the Factual Record

The Court begins with a preliminary statement on the scope of the factual record. "[A] motion to dismiss under Rule 12(b)(6) generally provides no occasion upon which to consider documents other than the complaint." *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020); *accord James D. Julia, Inc. v. Dan Murphy Auctions, LLC*, No. 1:21-cv-00025-JAW, 2021 U.S. Dist. LEXIS 115124, at *21 (D. Me. June 21, 2021) ("Ordinarily, a court ruling on a motion to dismiss may only consider whether the factual allegations within the four corners of the plaintiff's complaint state a plausible claim for relief"). However, here, Mr. Gilbert's objection to the Magistrate Judge's recommended decision raised new grounds for relief, one of which, the Title II claim, is the sole reason his case survived the initial screening pursuant to 28 U.S.C. § 1915(e).

---

[4]    Consistent with the motion to dismiss standard, the Court relied on the complaint's well-pleaded facts. "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

"A party may amend its pleading once as a matter of course no later than . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)." FED. R. CIV. P. 15(a)(1)(B). Mr. Gilbert's complaint was a pleading to which a responsive pleading was required; in lieu of its answer, Maine DHHS filed a motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6). *See Def.'s Mot. to Dismiss.* Mr. Gilbert filed his objection to the Recommended Decision before Maine DHHS filed its motion to dismiss and, thus, his amended complaint was filed as of right. *See Howard v. IDEXX Distrib.*, No. 2:20-cv-00079-JDL, 2020 U.S. Dist. LEXIS 117455, at *2-3 (D. Me. July 5, 2020). In turn, an amended complaint that was "filed *as of right* . . . bec[omes] the operative complaint without judicial intervention and before any jurisdictional challenge had surfaced." *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 96 (1st Cir. 2008) (emphasis in original).

The Court thus construes Mr. Gilbert's objection as an amended complaint, which supersedes his original complaint as the operative filing, and recounts the factual allegations as stated within that amended complaint for the purpose of ruling on the Defendants' motion to dismiss.

## 2.    The Factual Record

Mr. Gilbert is a disabled United States citizen collecting Social Security Disability Insurance (SSDI) with numerous diagnoses including Bipolar Disorder, Schizoaffective Disorder, Post-Traumatic Stress Disorder (PTSD), traumatic brain injuries, insomnia, and mania. *Am. Compl.* at 2. Riverview Psychiatric Center

knows, and at all times relevant to this dispute knew, about Mr. Gilbert's disability status. *Id.* at 1, 3.

Mr. Gilbert was a civil inpatient at Riverview on the Lower Kennebec Unit around the time of the November 2022 election and "followed a presented process to obtain [his] ballot . . . but the process apparently fell apart." *Id.* at 1, 3. Ahead of Election Day, the Plaintiff "spoke to everyone [he] could see behind the huge desk on the unit . . . [including] 'mental health workers' . . .. [who] "are suppose[d] to communicate things to others within who are not at the desk." *Id.* at 1. Mr. Gilbert believes everyone on the unit and all the staff knew he did not have his ballot before the election. *Id.* He asked the mental health workers behind the desk, advocates, and his doctor, and "asked as much as anyone could ask, of the employees on the unit, . . . even ask[ing] contracted non-state paid people who worked on the unit." *Id.* Mr. Gilbert made these requests "well in advance of the election" and "was very outspoken on what occurred to [him]." *Id.* at 1, 2.

On the date of the November 2022 election, Mr. Gilbert did not have his ballot. *Id.* At this time, he "grabbed the list off the window, with only one other name on it." *Id.* at 1. He states that medical records show he was present at Riverview during the November 2022 election and, according to voting records, he did not vote in 2022. *Id.*

Mr. Gilbert says he followed the internally prescribed process to obtain his ballot as a civil inpatient at a psychiatric hospital, but then received a reply "that there was an error and now it seems there [are] no repercussions." *Id.* As a result of this experience, Mr. Gilbert was "made [to] . . . feel angst and tremendously defeated

. . . like [he] was less than a citizen." *Id.* at 2 (ellipses in original). He filed a grievance complaint over the issue in which Maine DHHS replied that there was an error; their records keep grievances for at least two years. *Id.* at 3.

Subsequently, in the 2024 primary elections, Mr. Gilbert was again at Riverview and "saw who[] [he] believe[s] is in control of voting . . . persuaded a female patient to vote and also went on to make sure the patient was going to vote for Joe Biden," which he describes as "another violation of voting at Riverview." *Id.* at 2.

### B.     The Parties' Positions on the Motion to Dismiss

#### 1.     The Plaintiff's Legal Claims in the Amended Complaint

As noted above, the Plaintiff's amended complaint brings arguments pursuant to the Fifteenth Amendment, Article I, and the ADA. Having previously dismissed the Fifteenth Amendment and Article I claims, the Court addresses only the remaining claim alleging a violation of the voting rights provision of Title II of the ADA. *See Order on Rec. Dec. and Obj.* at 1-12.

Mr. Gilbert argues his deprivation of his right to vote in the November 2022 election was "egregious," alleging he "was guaranteed a right to vote in this country, a process to obtaining [his] ballot as a civil inpatient at a psychiatric hospital, [he] followed it and then [he] got a reply back that there was an error and now it seems there [are] no repercussions." *Am. Compl.* at 1. "This is an example of losing our country's foundation, the right to vote . . . Democracy," he contends. *Id.* (ellipsis in original). He argues "[his] loss is great" and his "statement of what happened can be discovered by a factfinder and moves a discernible legal claim 'across the line from conceivable to plausible' entitlement to relief." *Id.*

8

Addressing the Magistrate Judge's conclusion that the Eleventh Amendment prevents the Plaintiff from suing Maine DHHS, Mr. Gilbert says "[t]he Americans with Disabilities Act . . . matters in this case as well." *Id.* at 2. He reports that he is a disabled U.S. citizen collecting SSDI and diagnosed with Bipolar Disorder, Schizoaffective Disorder, PTSD, traumatic brain injuries, insomnia and mania, and additionally contends "Riverview obviously knows this" because "[his] disabled status was stated on the application to proceed without payment." *Id.* Mr. Gilbert argues the ADA provides a pathway to relief pursuant to 42 U.S.C. § 12202 which he claims says "that states are not immune from lawsuits in federal or state court for ADA violations." *Id.* Further, he contends the ADA "states that people with disabilities must have a full and equal opportunity to vote in all elections . . . and that includes early or absentee ballots." *Id.* (ellipsis in original). "The [] ADA[] covers [his] status as an American with a disability and . . . therefore, when violated, abrogates sovereign immunity," Mr. Gilbert alleges. *Id.* The Plaintiff argues that "not getting [him] [his] ballot after [he] followed the process . . . violated the ADA," claiming further that Riverview's employees "neglect[ed] his right to vote," and he was "very outspoken on what occurred to [him], which means everyone knew on the unit." *Id.*

Mr. Gilbert seeks relief in the form of three million dollars in punitive damages, explaining "[p]unitive damages are a part of our justice system. Relief i[s] not really sought. I seek punishment and if this is already law, to provide a ballot inside a state psychiatric hospital . . . and it wasn't done . . . the only thing left to seek is a punitive damage . . . and taking away is something I can[]not get back." *Id.* at 1

9

(ellipses in original). He appears to resist the Magistrate Judge's characterization of his request for relief as injunctive, saying "[t]o not have a punitive damage and [instead have] a simple injunction would be to excuse the violation and let my rights stand as violated in the 2022 election . . . and what's the point of law if penalties, and this one at that . . . a violation of the very first civil right and the ADA . . .are not had." *Id.* at 2 (ellipses in original).

Finally, Mr. Gilbert clarifies that he brings suit against Maine DHHS because it oversees Riverview and "[t]his rights violation by so many at Riverview makes DHHS as a whole the responsible party." *Id.* at 2. He says further that "there were so many people I asked about getting my ballot that it'd be impractical to name them all as defendants in the case that the entity that oversees them would be best to su[e] based on that fact." *Id.* at 3.

### 2.     The Defendant's Motion to Dismiss

Maine DHHS moves to dismiss Mr. Gilbert's Title II claim against it pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

### a.     Rule 12(b)(1)

Maine DHHS argues the amended complaint warrants dismissal because Mr. Gilbert has not alleged sufficient facts to establish the redressability prong of Article III standing. *Def.'s Mot. to Dismiss* at 1. If a plaintiff fails to establish that he or she has suffered an injury-in-fact, that the defendant's conduct caused his or her injury, or that the Court has authority to redress this injury, Maine DHHS agues the plaintiff "has failed to establish standing, and the Court must dismiss the claim for

lack of subject matter jurisdiction." *Id.* at 5 (citing *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 266 (1st Cir. 2022); *Gideon Asen LLC v. Glessner*, 583 F. Supp. 3d 242, 247-48 (D. Me. 2022)).

Alleging that Mr. Gilbert seeks compensatory damages for "mental angst," punitive damages, and injunctive relief, the Defendant alleges that the Court must dismiss the amended complaint because Title II affords Mr. Gilbert none of these forms of requested relief. *Id.* at 1, 5. Beginning with punitive damages, Maine DHHS argues the Supreme Court "has made clear that Title II of the ADA does not allow for punitive damages." *Id.* at 6 (citing, e.g., *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (holding that punitive damages are not available for claims brought under Title II); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 28 (1st Cir. 2006) (same)).

On the issue of compensatory damages for "mental injuries" including "mental angst," the Defendant argues that a recovery of compensatory damages under Title II requires a plaintiff to demonstrate that the defendant intentionally discriminated against him or caused him to suffer economic harm. *Id.* (citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 126-27 (1st Cir. 2003)). Here, "Mr. Gilbert has not alleged that DHHS intentionally discriminated against him, or that he suffered economic harm," Defendant contends. *Id.* (first citing *Compl.*; *Am. Compl.*, then collecting cases from the First Circuit and other federal courts holding the recovery of compensatory damages under the ADA requires a showing of discriminatory animus or economic harm). At bottom, the Defendant argues Mr. Gilbert has not alleged either of these required elements, and "[m]erely labeling the delay as intentional discrimination,

11

without some modicum of evidence demonstrating an actual discriminatory animus, is itself not enough." *Id.* at 7 & n.5 (quoting *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 18 (1st Cir. 2006)).  Maine DHHS proceeds to cite caselaw emphasizing that damages for emotional distress alone are not available under either Title II of the ADA or its sister statute, the Rehabilitation Act.  *Id.* at 7-8 (collecting federal cases).

Finally, insofar as Mr. Gilbert's request for "a remedy" to the problem of not allowing inpatients to receive their ballots at Riverview is a motion for injunctive relief, the Defendant argues that he does not allege facts suggesting there is a "real and immediate threat" of harm sufficient to warrant an injunction.  *Id.* at 8-9 (first quoting *Compl.* at 7, then quoting *Gray v. Cummings*, 917 F.3d 1, 19 (1st Cir. 2019) (in turn quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 111 (1983)) (citing *Compl.*; *Am. Compl.*).  Maine DHHS insists "past injury, in and of itself, 'is an insufficient predicate for equitable relief.'"  *Id.* at 9 (quoting *Gray*, 917 F.3d at 19 (in turn quoting *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992)).  The Defendant argues there is nothing in Mr. Gilbert's complaint or amended complaint which would allow the Court to grant him injunctive relief.  *Id.*

Maine DHHS concludes that the Court should dismiss Mr. Gilbert's ADA claim pursuant to Rule 12(b)(1) for failing to allege sufficient facts to establish his standing. *Id.*

### b.    Rule 12(b)(6)

In the alternative, Maine DHHS briefly argues that the amended complaint warrants dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) "because Mr.

Gilbert has failed to allege a plausible claim to relief." *Id.* at 9-10 (collecting cases from the Supreme Court, First Circuit, and other federal courts discussing Federl Rule of Civil Procedure 12(b)(6)).

### 3.    The Plaintiff's Opposition

Mr. Gilbert opposes the motion to dismiss, arguing in relevant part that "[t]here is Article III standing to sue because DHHS broke the law in the ADA and the ADA is there to protect the rights of disabled . . . such as the [F]irst [A]mendment and the right to due process that were violated in this case." *Pl.'s Dismissal Opp'n and Amend Reply* at 1 (ellipsis in original). He contends "[t]here is a 'case . . .' here because Federal law was broken." *Id.* (ellipsis in original).

Mr. Gilbert alleges he has satisfied Article III's requirement of an injury-in-fact because "the right to vote while being an involuntary inpatient" amounts to "an invasion of a legally protected interest," a violation he deems "concrete and particularized" as well as "actual." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "What is so concrete, particularized and actual is that there is an admission by the state that I did not vote (when others did get to vote: an omission) . . . making a [F]irst [A]mendment violation and due process violation that the ADA protect," he insists. *Id.* (ellipsis in original). "This claim of injury by omission is new," he proffers, but maintains "it is fitting." *Id.* at 2. Mr. Gilbert says further that "[t]his case is also a violation; crime on Democracy and election integrity [and] [i]f it were to go without redress it would set a dangerous precedent, allowing for more egregious neglect by psychiatric hospitals' staff in getting someone their ballot." *Id.* at 3.

Next, Mr. Gilbert asserts he has satisfied the causation prong of constitutional standing because "there [are] facts that show a legal loss was had, where the law gives the Plaintiff the right to vote and it was lost at the state's doing." *Id.* at 1. Mr. Gilbert adds "[c]ausation was the fact that he was a patient, forced to be in Riverview by the state and an election occurred in which he didn't get his ballot as an outcome when others did." *Id.* "The state controlled everything having to do with the process of getting a ballot," he says. *Id.*

Turning to the Defendant's argument that dismissal is warranted because Mr. Gilbert failed to allege a plausible claim to relief, the Plaintiff responds "the state says that the claim has no remedy, yet there is no case similar in violation;[ ]crime, and it is not only a crime on the Plaintiff but also an election crime." *Id.* Mr. Gilbert asserts further that "[p]unitive damages should be awarded because the *Bivens* case . . . gave a remedy due to the 'importance of the right violated' [and] [s]ince this is an unprecedented case, the Plaintiff feels the Bivens case applies." *Id.* at 2 (ellipsis and emphasis in original) (referencing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)). Mr. Gilbert rejects Maine DHHS's contention that punitive damages are unavailable for a Title II violation because "[this case] is a completely different violation in which a right to vote, and discrimination upon the Plaintiff because he was exhibiting grievances for several days in regards to getting his ballot so the staff ignored him," and because "[a] compensatory damage here is not available because there is no money lost with a lost vote." *Id.* He urges the Court to award him punitive damages as "an unprecedented remedy as the only means to assure it

14

does not occur again; deter." *Id.* Continuing to address redressability, Mr. Gilbert says:

> Also, no one can assume the Plaintiff will not return to Riverview and be subject to the same conditions and subject to the same discrimination. The Plaintiff is 39 years old, been hospitalized 26 times, 8 times in Riverview . . . so it is awfully bold to say that he will not be subject to their care again. There is no way to predict the future.

*Id.* at 4 (Plaintiff's ellipsis).

### 4.    The Defendant's Reply

Maine DHHS replies "Mr. Gilbert has still not alleged sufficient facts to establish the redressability prong of Article III standing," so as to make dismissal under Rule 12(b)(1) or, alternatively, Rule 12(b)(6) appropriate. *Def.'s Dismissal Reply* at 1-2. The Defendant construes the Plaintiff's opposition to its motion to dismiss as "admit[ting] that compensatory damages for 'mental anguish' are unavailable, however, he *now* seeks compensatory damages for economic harm to the public, punitive damages, and injunctive relief," none of which the Defendant believes are available to him under Title II. *Id.* at 1 (emphasis in original).

Maine DHHS alleges "Mr. Gilbert has not alleged any injury entitling him to relief for compensatory damages," where "he himself has not alleged how *he* has suffered economic harm entitling *him* to relief." *Id.* at 2-3 (emphasis in original) (citing *Pl.'s Dismissal Opp'n and Amend Reply*). "[E]ven if he has alleged an injury entitling him to relief, he has not even alleged 'discriminatory intent,' which would entitle him to compensatory damage for economic harm," *id.* at 3 (citing, e.g., *Nieves-Márquez*, 353 F.3d at 126), and his unsupported assertion that he was not given his

ballot because he wanted to vote for Paul LePage should not change the Court's calculus, the Defendant maintains. *Id.*

The Defendant reasserts its arguments that punitive damages are unavailable for a Title II violation, *id.* at 4 (collecting cases), and "Mr. Gilbert has still not alleged facts demonstrating that he is entitled to injunctive relief." *Id.* at 5.

Based on the foregoing, Maine DHHS urges the Court to grant its motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6). *Id.*

### C.    Motion to Dismiss Legal Standard

#### 1.    Federal Rule of Civil Procedure 12(b)(1)

"A motion to dismiss an action under Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it." *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005) (internal citation omitted). "The burden falls on the plaintiff to clearly allege facts demonstrating that he is a proper party to invoke federal jurisdiction." *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996) (citation and internal quotation marks omitted); *see also Me. Council of the Alt. Salmon Fed'n v. Nat'l Marine Fisheries Serv.*, 203 F. Supp. 3d 58, 75 (D. Me. 2016) ("The plaintiff, as the party asserting subject matter jurisdiction, has the burden of demonstrating its existence"); *Fábrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 33-34 (1st Cir. 2012) ("The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction"). In ruling on a Rule 12(b)(1) motion, the Court "must construe the complaint liberally, treating all well-

pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996). "If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

### 2.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, at minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Evaluating the plausibility of a claim is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

17

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *accord Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

### D.    Motion to Dismiss Discussion

#### 1.    Federal Rule of Civil Procedure 12(b)(1)

Maine DHHS argues that the relief Mr. Gilbert seeks is unavailable under Title II and, therefore, the Plaintiff has not met his burden to establish he has standing to bring his claim. The thrust of Mr. Gilbert's opposition is that he believes his arguments are unprecedented and, thus, the Court should award him equally novel relief.

As an application of the United States Constitution's limitation of the Article III courts' jurisdiction to "Cases" and "Controversies," U.S. CONST. art. III, § 2, cl. 2, the United States Supreme Court has developed the doctrine of constitutional standing. In *Lujan v. Defenders of Wildlife*, the Supreme Court elucidated the

"irreducible constitutional minimum of standing" that a party invoking federal jurisdiction must establish: (1) an injury in fact that is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and conduct complained of; and (3) a likelihood that the court could redress the injury with a favorable decision. *Lujan*, 504 U.S. at 560-61.

Maine DHHS' motion to dismiss focuses on the third prong: redressability. The question for the Court is thus whether Title II of the ADA permits recovery of Mr. Gilbert's sought relief. As an initial matter, the Defendant construes Mr. Gilbert's complaint as seeking three kinds of relief: compensatory damages, punitive damages, and an injunction. The Court agrees with the Defendant that Mr. Gilbert seeks punitive damages and injunctive relief. *See Am. Compl.* at 2 ("So in my statement about relief I wanted to make sure, through punitive damages . . . that not getting civil inpatients their ballots at any psychiatric institution in America is grounds for a $3,000,000 penalty. That's what I intended with a punitive damage. What Nivison calls an injunction is that I want all civil inpatients to receive their ballot and consistently be able to vote or a penalty is had").

However, the Court is not so convinced that Mr. Gilbert's amended complaint, or his original complaint, requests compensatory damages. *See Compl.* at 7 ("No physical injuries. Mental injuries, yes, were had. Mental angst is what I felt[,] and contempt. It was especially upsetting to be in a state run hospital and see such a failure. In relief I seek [$]3,000,000 in punitive damages and some sort of remedy to the problem of not getting civil in-patients their ballot that's to the plaintiff's liking").

19

His opposition to the motion to dismiss further states "[a] compensatory damage here is not available because there is no money lost with a lost vote . . .. [t]he only thing left is a punitive damage." *Pl.'s Dismissal Opp'n and Amend Reply* at 2.

Nevertheless, select compensatory damages are available under Title II for non-economic harm and, consistent with the First Circuit's repeated instruction to district courts reviewing pro se filings to do so liberally, as well as the Defendant's reading of the Plaintiff's filings, the Court construes Mr. Gilbert's amended complaint as also seeking compensatory damages for alleged "[m]ental injuries" and "[m]ental angst." *Compl.* at 7; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating that pro se complaints are "to be liberally construed").

Thus, the Court considers whether Mr. Gilbert's alleged injuries could plausibly be redressed through punitive damages, injunctive relief, or compensatory damages.

### a.    Punitive Damages

First, "[p]unitive damages are clearly not available on . . . [a] Title II claim." *Nieves-Marquez*, 353 F.3d at 126 (citing *Barnes*, 536 U.S. at 189). Insofar as Mr. Gilbert seeks punitive damages to redress his alleged Title II injury, this is unavailing.

### b.    Injunctive Relief

Mr. Gilbert also seeks some form of injunctive relief. In his recommended decision, the Magistrate Judge determined injunctive relief was unavailable to Mr. Gilbert because "Plaintiff is no longer at Riverview and has not alleged that he will

be again, the complaint does not 'establish a real and immediate threat' that Plaintiff will again suffer the same harm," and "[w]ithout establishing a threat of future harm, a hypothetical claim for prospective relief . . . would fail." *Rec. Dec.* at 5. Mr. Gilbert responded to this point in his opposition to the Defendant's motion to dismiss:

> [N]o one can assume the Plaintiff will not return to Riverview and be subject to the same conditions and subject to the same discrimination. The Plaintiff is 39 years old, been hospitalized 26 times, 8 times in Riverview . . . so it is awfully bold to say that he will not be subject to their care again. There is no way to predict the future.

*Pl.'s Dismissal Opp'n and Amend Reply* at 4 (ellipsis in original).

The Magistrate Judge is, of course, correct that "[p]ast injury, in and of itself, 'is insufficient predicate for equitable relief.'" *Gray*, 917 F.3d at 19 (quoting *Am. Postal Workers Union*, 968 F.2d at 1376). "To have standing to pursue injunctive relief, a plaintiff must 'establish a real and immediate threat' resulting in 'a sufficient likelihood that []he will again be wronged in a similar way." *Id.* (quoting *Am. Postal Workers Union*, 968 F.2d at 1376 (in turn quoting *Lyons*, 461 U.S. at 109); and citing *Updike v. Multnomah Cnty.*, 870 F.3d 939, 948 (9th Cir. 2017), cert. denied sub nom. *Multnomah Cnty. v. Updike*, 586 U.S. 814 (2018) (finding that ADA plaintiff "lack[ed] standing to pursue his claims for injunctive relief") (citation amended); *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 306 (1st Cir. 2003) (requiring a "real and immediate threat of ongoing harm" for injunctive relief in ADA case)). This required showing corresponds with the axiomatic need, in the context of injunctive relief more generally, for a plaintiff to show that an

21

injunction is necessary to prevent irreparable harm.  *See Nat'l Tank Truck Carriers, Inc. v. Burke*, 608 F.2d 819, 824 (1st Cir. 1979).

The Court concludes Mr. Gilbert has not met this bar because he has failed to establish that he faces a "real and immediate threat of ongoing harm."  *See Gray*, 917 F.3d at 19.  First, Mr. Gilbert is not currently an inpatient at Riverview, and it is insufficient that the Plaintiff believes he may hypothetically return to Riverview at some unspecified point in the future based on precedent and because "[t]here is no way to predict the future."  *Pl.'s Dismissal Opp'n and Amend Reply* at 4.  At bottom, Mr. Gilbert's speculation does not evidence a "real and immediate" threat.  *See Gray*, 917 F.3d at 19.

Second, even if Mr. Gilbert had made this showing, he would still need to demonstrate "'a sufficient likelihood that []he will again be wronged *in a similar way*." *Id.* (emphasis supplied by the Court).  Analyzing a similar claim in *Gray*, the First Circuit concluded the plaintiff "cannot clear this hurdle" because "[w]hen all is said and done, it is not enough for [the plaintiff] to show that because she has bipolar disorder, she is likely to encounter the police again.  She must show that she is likely to be tased once more . . . and she has not managed any such showing."  *Id.* (citing *Lyons*, 461 U.S. at 105-06).  The same is true here: Mr. Gilbert has not pleaded, and the Court cannot reasonably infer, that there is "a sufficient likelihood" he will again be a civil inpatient at Riverview, during an election, for which he requests and does not receive a ballot, and thus is deprived of his right to vote.  *Id.*

22

In sum, the Court concludes injunctive relief is unavailable to Mr. Gilbert on his Title II claim.

### c.    Compensatory Damages

The availability of compensatory damages for non-economic harm presents a more challenging question.  In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), the United States Supreme Court ruled that a school district could not be held liable under Title IX of the Education Amendments of 1972 "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [district]'s behalf has actual knowledge of discrimination."  *Gebser*, 524 U.S. at 290.  Two decades later, the First Circuit observed "[w]hether the rationale of *Gebser* should be extended to insulate public entities from liability under Title II of the ADA on a theory of respondeat superior is an open question."  *Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019) (*comparing Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001) (stating that "public entity is liable for the vicarious acts of its employees" under Title II) *with Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348-49 (11th Cir. 2012) (finding no respondeat superior liability under section 504 of the Rehabilitation Act in light of *Gebser*)).  The First Circuit in *Gray* determined "[f]or present purposes, it is sufficient for us to assume, favorable to [the plaintiff], that the Town could be held vicariously liable under Title II for [the defendant's] actions."  *Id.*  This Court adopts that approach here.  *See Def.'s Mot. to Dismiss* at 1-11.

The next question, which the *Gray* Court also addressed, is whether a showing of deliberate indifference is enough to support recovery of compensatory damages under Title II. *Gray*, 917 F.3d at 17. "Since a plaintiff must show 'intentional discrimination' on the part of the public entity to be eligible for damages on a Title II claim, some uncertainty exists as to whether 'deliberate indifference' is the functional equivalent of 'intentional discrimination.'" *Id.* (citing *Nieves-Marquez*, 353 F.3d at 126). The Supreme Court has held that private individuals may recover compensatory damages under Title II only for intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001). The First Circuit in *Nieves-Marquez* observed that while "[o]ther courts are divided over whether compensatory damages under . . . Title II include damages for emotional harm or pain and suffering . . .. [t]his court held that such damages were not available when there was no evidence of economic harm or animus toward the disabled, but left open the question of whether such damages could be available in other circumstances." *Nieves-Marquez*, 353 F.3d at 126-27 (citing *Schultz v. Young Men's Christian Ass'n of U.S.*, 139 F.3d 286, 290-91 (1st Cir. 1999)).

The First Circuit observed in *Gray* that other federal circuit courts have concluded that a showing of deliberate indifference may suffice to prove this element, "[b]ut the question is open in this circuit, and we have stated that, 'under Title II, non-economic damages are only available when there is evidence 'of economic harm or animus towards the disabled.'" *Gray*, 917 F.3d at 17 (quoting *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 17 (1st Cir. 2006) (in turn quoting *Nieves-Marquez*, 353 F.3d

24

at 126-127)). "Proof of 'deliberate indifference' does not require 'a showing of personal ill will or animosity toward the disabled person.'" *Leclair v. Mass. Bay Transp. Auth.*, 300 F. Supp. 3d 318, 326 (D. Mass. 2018) (quoting *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011)). The test for deliberate indifference has two prongs: (1) "knowledge that a harm to a federally protected right is substantially likely," and (2) "a failure to act upon that . . . likelihood." *Id.* (quoting *Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228-29 (10th Cir. 2009)). Proof of "discriminatory animus," by contrast, requires a showing that the defendant intentionally discriminated against the plaintiff based on his disability. *Id.* (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012) ("Discriminatory animus . . . requires a showing of prejudice, spite, or ill will")).

In *Gray*, the First Circuit did not purport to definitively resolve the question of whether "deliberate indifference" suffices to establish intentionality, but concluded "[f]or present purposes, it is sufficient to assume, favorably to [the plaintiff] that deliberate indifference is the appropriate standard." *Gray*, 917 F.3d at 17. In light of the substantial similarities between *Gray* and the case at bar, this Court follows the *Gray* Court's determination that deliberate indifference establishes intentional discrimination for the purposes of ruling on this motion to dismiss and thus considers whether Mr. Gilbert's amended complaint plausibly pleads that the Defendant was deliberately indifferent to the Plaintiff's asserted rights.

Here, Mr. Gilbert's amended complaint, the facts of which the Court accepts as true for purposes of ruling on the motion to dismiss, says that he was a civil inpatient

at Riverview around the time of the November 2022 election and "followed a presented process to obtain [his] ballot . . . but the process apparently fell apart." *Am. Compl.* at 1, 3. Ahead of election day, the Plaintiff "spoke to everyone [he] could see behind the huge desk on the unit . . . [including] 'mental health workers' . . .. [who] "are suppose[d] to communicate things to others within who are not at the desk." *Id.* at 1. Mr. Gilbert believes everyone on the unit and all the staff knew he did not have his ballot before the election. *Id.* He asked the mental health workers behind the desk, advocates, and his doctor, and "asked as much as anyone could ask, of the employees on the unit, . . . even ask[ing] contracted non-state paid people who worked on the unit." *Id.* He made these requests "well in advance of the election" and "was very outspoken on what occurred to [him]." *Id.* at 1, 2. When the November 2022 election came, Mr. Gilbert did not have his ballot and was thus unable to vote. *Id.*

For purposes of ruling on the motion to dismiss, the Court concludes Mr. Gilbert has established discriminatory intent by virtue of deliberate indifference to his asserted rights. As the First Circuit held in *Nieves-Marquez*, "the plaintiffs clear this hurdle because the complaint, with all reasonable inferences drawn in its favor, alleges intentional discrimination. The defendants deny that there was any wrongful intent, but at this stage, we must credit the pleadings." 353 F.3d at 126.

Concluding Mr. Gilbert's Title II claim may be redressable through compensatory damages, the Court does not grant the Defendant's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

### 2.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Here, Maine DHHS's argument for dismissal pursuant to Rule 12(b)(6) mirrors its argument for dismissal under Rule 12(b)(1) by asserting Mr. Gilbert's alleged lack of standing, briefly stating "[a]s shown above, because no relief is available to Mr. Gilbert, the Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6)." *Def.'s Mot. to Dismiss* at 9.

Having already concluded Mr. Gilbert has plausibly shown his Title II claim is redressable and that he has standing to proceed on this claim for the reasons already explained, the Court concludes the Defendant's motion to dismiss pursuant to Rule 12(b)(6) is unavailing for the same reasons. The Court thus dismisses the Defendant's motion to dismiss Mr. Gilbert's Title II claim under Rule 12(b)(6).

## III.    DUSTIN GRAHAM GILBERT'S MOTION TO AMEND

### A.    The Parties' Positions on the Motion to Amend

#### 1.    The Plaintiff's Motion to Amend

Mr. Gilbert moves to amend his complaint for the second time to add a First Amendment violation pursuant to 42 U.S.C. § 1983. He explains: "[o]riginally the Plaintiff only felt his right to vote was a symbol of speech, but after further review . .

. he feels a symbol of speech is also speech . . . and that it too has the same power—if not more." *Pl.'s Mot. to Amend* at 1 (Plaintiff's ellipses).

Turning to his legal argument, Mr. Gilbert contends "[u]nder U[.]S[.] Code 42, Section 19[83], state employees acting under color of state law can[]not violate civil rights and not be liable." *Id.* In the instant case, he says, "so many state employees were notified the Plaintiff did not have his ballot, and so many exhibited neglect— that the state entity is more practical to hold liable." *Id.* "This is a 1[]st Amendment violation and the state can[]not fall back on the 11th Amendment to protect itself," he concludes. *Id.*

Mr. Gilbert argues that "the court should allow this Amendment thus far into the proceedings under Federal Rule of Civil Procedure 15, due to that when the Amendment is for the betterment of justice, it should be allowed." *Id.* He characterizes it as a "mistake" that he left the First Amendment claim out of his original complaint, but says "the Pro Se Plaintiff has had a hard time in life with being fair to a fault," adding "[t]he Plaintiff simply was trying to not go over the top with his claims initially." *Id.*

## 2.    The Defendant's Opposition

Maine DHHS opposes the motion to amend "because Mr. Gilbert does not have standing to pursue his claims and he has failed to state a claim upon which relief can be granted." *Def.'s Opp'n to Mot. to Amend* at 1 (citing FED. R. CIV. P. 12(b)(1), (6)). The Defendant contends it is immune from Mr. Gilbert's proposed additional First Amendment claim, "thus making any amendment to the Complaint futile," for two

reasons: "(1) a Section 1983 claim against DHHS, an arm of the State of Maine, would be barred by sovereign immunity, and (2) DHHS is not a 'person' that is subject to suit under Section 1983." *Id.* at 3.

On its first ground, the Defendant begins by collecting caselaw from the United States Supreme Court and the First Circuit establishing that the Eleventh Amendment bars suits against states in federal court unless the state has waived its immunity or Congress has explicitly abrogated the State's sovereign immunity. *Id.* at 3-4 (collecting cases). Maine DHHS asserts "[s]tates and their agencies are entitled to sovereign immunity 'regardless of the relief sought,'" *id.* at 3 (quoting *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009)), and "[t]his immunity extends to any entity that is an 'arm of the state.'" *Id.* (quoting *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002)).

Here, Maine DHHS argues it is an arm of the state whose purpose is to "provide health and human services to the people of Maine," and other courts in this District have dismissed § 1983 claims against it upon concluding it is immune from suit in federal court. *Id.* at 4 (citing *Ross v. Polky*, No. 2:24-cv-00057-LEW, 2024 U.S. Dist. LEXIS 191381 (D. Me. Oct. 22, 2024) (citation amended); 22-A M.R.S. §§ 201-02 (2019)). The Defendant argues further that Congress, in enacting § 1983, did not abrogate the states' sovereign immunity. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 54 (1st Cir. 2003)). Maine DHHS continues that "Maine has expressly refused to waive its Eleventh Amendment protections," and "Mr. Gilbert has not alleged any facts that would show

that DHHS has waived its sovereign immunity." *Id.* at 5 (citing 14 M.R.S. § 8118 (2003); *Ross*, 2024 U.S. Dist. LEXIS 191381).

Turning to its second alleged basis for dismissal, Maine DHHS asserts that "[e]ven if sovereign immunity did not bar Mr. Gilbert's proposed Section 1983 claim, DHHS is not a 'person' that is subject to suit under Section 1983," such that the Plaintiff's motion to amend is futile. *Id.* at 5. The Defendant says further that the Supreme Court and First Circuit have held that a state and its agencies are not "persons" for purposes of 42 U.S.C. § 1983. *Id.* (citing *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

For these two reasons, Maine DHHS urges the Court to deny Mr. Gilbert's motion to amend his complaint.

### 3. The Plaintiff's Reply

Mr. Gilbert briefly replies to the Defendant's opposition:

> Regarding the Section 1983 claim, the State can[]not claim sovereign immunity because they are a corporation, making them a "person[."] They are a corporation in which the state, and the arms of it, are subject to laws surrounding each individual's rights. (Maine became "incorporated" in 1820, and is a corporation where they can own property, contract and sue/be sued.) The state had a duty and failed to carry out the law; administer a ballot. This is not futile because of the state's tort[i]ous actions and omissions.

*Pl.'s Dismissal Opp'n and Amend Reply* at 2.

### B. Motion to Amend Legal Standard

Federal Rule of Civil Procedure 15 concerns amended and supplemental pleadings. FED. R. CIV. P. 15. Rule 15 allows that "[a] party may amend its pleading once as a matter of course" within twenty-one days after service or, if the pleading is

one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier.  FED. R. CIV. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  FED. R. CIV. P. 15(a)(2).

Although "[t]he court should freely give leave [to amend] when justice so requires," *id.*, "this does not mean . . . that a trial court must mindlessly grant every request for leave to amend.'  Indeed, 'a district court may deny leave to amend when the request is characterized by undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'"  *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Ints. in Int'l & Foreign Cts.*, 87 F.4th 62, 80 (1st Cir. 2023) (internal citation omitted) (quoting *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013)); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).  "So, too, the court may deny the request if the proposed amendment 'would serve no useful purpose.'"  *Calderón-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006)).

In determining whether to grant a motion for leave to amend, a district court is given broad discretion, *Foman*, 371 U.S. at 182, and "must consider the totality of the circumstances."  *Nikitine*, 715 F.3d at 390.  The First Circuit has recognized that district court judges have "'great latitude' over case-management functions under Rule 16(b)."  *O'Brien v. Town of Bellingham*, 943 F.3d 514, 528 (1st Cir. 2019) (quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5 (1st Cir. 1993)).

C.      **Motion to Amend Discussion**

1.      **Applicable Standard of Review**

The Court first takes a moment to review the procedural history in this case to determine which provision of Rule 15 applies to Mr. Gilbert's motion.  On November 1, 2024, Mr. Gilbert filed a complaint against Maine DHHS, alleging a Fifteenth Amendment violation.  *Compl.*  The Magistrate Judge recommended the Court dismiss Mr. Gilbert's complaint on December 9, 2024, *Rec. Dec.*, and on December 19, 2024 and December 23, 2024, Mr. Gilbert filed an objection as well as several attachments in which he raised new claims under Article I of the United States Constitution and the ADA, which did not appear in his complaint.  *Pl.'s Obj.*; *Additional Attachs.*

This Court issued an order addressing the Recommended Decision and the Plaintiff's objections on December 30, 2024.  *Order on Rec. Dec. and Obj.*  In that order, the Court wrote, pursuant to Federal Rule of Civil Procedure 72, a party "may serve and file objections to the order within 14 days after being served with a copy." FED. R. CIV. P. 72; *accord* D. ME. LOC. R. 72(a) ("Within 14 days of being served with an objection, a party opposing the objection may file a response with an incorporated memorandum of law").  However, an objection is not an opportunity to relitigate the issue by raising novel arguments.  *See Orchard v. United States*, 332 F. Supp. 2d 275, 276 (D. Me. 2004) ("A litigant is not permitted to raise new issues to the district judge in his objections to the recommendation of the magistrate judge") (citing *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988));

32

*Barden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (quoting *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D. Me. 1984) ("Parties must take before the magistrate judge 'not only their "best shot" but all of their shots'"). Despite the directive of Local Rule 72(a), the Court in its December 30, 2024 order exercised its discretion to consider the contents of Mr. Gilbert's Article I and ADA claims in light of its obligation to liberally construe the filings of a pro se litigant. *See Gakuba v. Frey*, Nos. 23-1084, 23-1095, 2024 U.S. App. LEXIS 18703, at \*1 (1st Cir. Apr. 10, 2024) (citing *Erickson*, 551 U.S. at 94). The Court affirmed the Magistrate Judge's recommendation to dismiss the Plaintiff's Fifteenth Amendment claim and concluded the Article I claim raised for the first time in the objection was unavailing and ordered it dismissed but allowed the newly raised ADA claim to continue. *Order on Rec. Dec. and Obj.* at 1.

Then, on February 20, 2025, Mr. Gilbert filed a motion to amend his complaint a second time, now to bring a First Amendment violation pursuant to 42 U.S.C. § 1983. *Mot. to Amend.* The Defendant, on March 3, 2025, opposed Mr. Gilbert's motion to amend on the ground that permitting amendment would be futile because it fails to state a claim upon which relief could be granted. *Def.'s Opp'n to Mot. to Amend.* at 2 (collecting cases).

The question for the Court is whether, in reviewing Mr. Gilbert's pending motion to amend, he is entitled to amend his complaint as of right, or whether he may amend only with the opposing party's consent or the court's leave. *Compare* FED. R. CIV. P. 15(a)(1) *with* FED. R. CIV. P. 15(a)(2). Mr. Gilbert filed his second amended

33

complaint on February 20, 2025, before the Defendant filed its motion to dismiss on March 3, 2025, and twenty-one days after the Defendant agreed to accept service on January 30, 2025. He thus moved to amend within twenty-one days of service. FED. R. CIV. P. 15(a)(1)(A). However, as previously noted, the Court has treated Mr. Gilbert's objection as an amended complaint because it raised novel claims not included in his original complaint. Although Mr. Gilbert did not file a motion to amend, the Court, being of a practical mind, has construed the objection as an amended complaint filed as of right under Rule 15(a) which superseded and replaced the original complaint. FED. R. CIV. P. 15(a)(1); *see also ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008) ("An amended complaint, once filed, normally supersedes the antecedent complaint . . .. Thereafter, the earlier complaint is a dead letter and 'no longer performs any function in the case'") (citing *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003); quoting *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003)). If the Court had not treated Mr. Gilbert's objection as an amended complaint, Local Rule 72(a) would have directed the Court to dismiss his complaint for the reasons explained above.

The Court concludes that Mr. Gilbert's objection to the recommended decision operates as his amended complaint, filed once as of right pursuant to Rule 15(a)(1), and thus, to amend his complaint for a second time, Mr. Gilbert "may amend . . . only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). While Rule 15 instructs that courts "should freely give leave [to amend] when justice so requires," *id.*, "this does not mean . . . that a trial court must

34

mindlessly grant every request for leave to amend.'" *Universal Trading & Inv. Co.*, 87 F.4th at 80. Moreover, "[t]he Court must deny a motion to amend as futile if the 'complaint, as amended, could not withstand a motion to dismiss.'" *Fannie Mae v. Wilson*, No. 2:18-cv-00366-JAW, 2019 U.S. Dist. LEXIS 72293, at *7 (D. Me. Apr. 30, 2019) (quoting *Shannon v. Houlton Band of Maliseet Indians*, 54 F. Supp. 2d 35, 38 (D. Me. 1999)).

The Court proceeds to consider the merits of the Defendant's contention that Mr. Gilbert's motion to amend should be denied because the contents of the proffered amendment would be futile. Specifically, Maine DHHS argues Mr. Gilbert's contemplated § 1983 claim is barred by sovereign immunity, and, further, that § 1983 does not provide a pathway to relief because Maine DHHS is not a "person" subject to suit under that statute.

## 2. Sovereign Immunity

The Supreme Court has interpreted the Eleventh Amendment to deprive the federal courts of subject matter jurisdiction over suits by any citizen against any state. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This immunity extends to agencies under state control. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

Maine DHHS is a "cabinet-level department" whose mission is "to provide health and human services to the people of Maine." 22-A M.R.S. §§ 201-02. This District has previously held "because [Maine] DHHS is a governmental entity and 'an arm of the State' of Maine," it is entitled to Eleventh Amendment immunity "unless

the State has done something to waive it." *Ross*, 2024 U.S. Dist. LEXIS 191381, at

*4 (quoting *Hill-Spotswood v. Mayhew*, No. 14-cv-00206-GZS, 2015 U.S. Dist. LEXIS

1009, at *16 (D. Me. Jan. 29, 2015)); *id.* at *3 ("Plaintiff's § 1983 claim against [Maine]

DHHS resolves readily under Rule 12(b)(1) based on sovereign immunity").   Mr.

Gilbert's assertion that Maine DHHS is in fact a corporation because the state of

Maine was allegedly "incorporated" in 1820 does not sway the Court from this clear

precedent to the contrary.  *Pl.'s Dismissal Opp'n and Amend Reply* at 2.  The Court

concludes Maine DHHS is an agency of the state of Maine, and for Eleventh

Amendment purposes a suit against Maine DHHS is a suit against the State.  *See*

*P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 144.

The *Ex parte Young* exception[5] to the Eleventh Amendment for suits against

state officers in their official capacities does not extend to suits against state agencies.

*Irizarry-Mora v. Univ. of P.R.*, 647 F.3d 9, 11 n.1 (1st Cir. 2011).  Thus, Maine DHHS

cannot be sued directly unless it has waived its sovereign immunity or Congress has

unequivocally  abrogated  that  immunity  pursuant  to  § 5  of  the  Fourteenth

Amendment.  *Seminole Tribe of Fla.*, 517 U.S. at 55-56.  Neither party proffers that

Congress has abrogated the state of Maine's Eleventh Amendment immunity for civil

rights claims brought under 42 U.S.C. § 1983, or that the State has itself voluntarily

waived its immunity.  Eleventh Amendment immunity is jurisdictional in nature,

---

[5]        "[T]he Ex parte Young exception applies only when individuals seek prospective relief against
a state official's ongoing violation of federal law."  *Cotto v. Campbell*, 126 F.4th 761 (1st Cir. 2025)
(citing *Ex parte Young*, 209 U.S. 123 (1908)).

and "absent waiver, neither a State nor its agencies acting under its control may be subject to suit in federal court." *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 144.

### 3.    42 U.S.C. § 1983

The result is the same pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To maintain a claim under § 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

However, to state a valid claim under § 1983, a complaint must bring such allegations against a "person" acting under color of state law. 42 U.S.C. § 1983. It is well settled that neither a state nor its agencies are "persons" within the meaning of § 1983. *See, e.g.*, *Poirier*, 558 F.3d at 97 & n.6; *Will,* 491 U.S. at 64, 70-71; *Nieves–Marquez,* 353 F.3d at 124 ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity"). As a

state agency, Maine DHHS is not a person for purposes of § 1983 and, consequently, Plaintiff has failed to state a cognizable § 1983 claim against the Defendant. Mr. Gilbert's unsupported assertion that Maine DHHS is in fact a "person" within the meaning of § 1983 because the state of Maine was "incorporated" in 1820 does not change this well-established legal precedent.

The result would not be different even if the Court were to construe the Plaintiff's filings to include a request for prospective relief against a state official rather than the state agency, because, as the Magistrate Judge insightfully stated in his Recommended Decision, "the exception to [sovereign] immunity laid out in *Ex Parte Young*, 209 U.S. 123 (1908), allows federal courts to grant prospective injunctive relief to prevent a continuing violation of federal law, in part because a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Rec. Dec.* at 4 (quoting *Doe v. Shibinette*, 16 F.4th 894, 903 (1st Cir. 2021) (internal quotation marks and modifications omitted)). Thus, the Magistrate Judge determined that "[e]ven if Plaintiff had named a state official rather than a state agency, and even if Plaintiff's request for 'some sort of remedy to the problem of not getting civil in-patients their ballot that's to the plaintiff's liking' (Complaint at 7) could be construed as a request for prospective injunctive relief, because Plaintiff is no longer at Riverview and has not alleged that he will be again, the complaint does not 'establish a real and immediate threat' that Plaintiff will again suffer the same harm." *Id.* The Magistrate Judge wrote that "[w]ithout establishing a threat of future harm, a hypothetical claim for prospective relief capable of

surviving the doctrine of sovereign immunity would fail because the Court could not find that Plaintiff has the requisite standing to obtain prospective relief." *Id.* (citing *Lyons*, 461 U.S. at 105). For the reasons already discussed in this order, and those stated in the Recommended Decision, the Court agrees with the Magistrate Judge that Mr. Gilbert does not have a pathway to relief under § 1983.

In sum, the Court agrees with the Defendant that Mr. Gilbert's motion to amend his complaint to add a claim pursuant to 42 U.S.C. § 1983 must be dismissed as futile. *Fannie Mae*, 2019 U.S. Dist. LEXIS 72293, at *7 ("The Court must deny a motion to amend as futile if the 'complaint, as amended, could not withstand a motion to dismiss'"). Here, Mr. Gilbert's proposed § 1983 claim would be subject to dismissal under Rule 12(b)(6) for failure to state a valid claim for relief, and alternatively subject to dismissal under Rule 12(b)(1) for lack of jurisdiction. *Ploss v. Mass. Dep't of State Police*, Civ. Action No: 1:23-CV-13236-DLC, 2025 U.S. Dist. LEXIS 50047, at *5 (D. Mass. March 19, 2025) (concluding dismissal of a First Amendment claim in violation of 42 U.S.C. § 1983 against a state agency was warranted under Rule 12(b)(6) and, alternatively, Rule 12(b)(1)). The Court accordingly dismisses Mr. Gilbert's motion to amend his complaint for the second time to include a First Amendment claim.

## IV.    THE PLAINTIFF'S MOTION TO CONTINUE

### A.    Dustin Graham Gilbert's Motion to Continue

As noted, while Mr. Gilbert's motion to amend and the Defendant's motion to dismiss were still pending, the Plaintiff filed a motion to "continue this case . . . for

the reason of a Discovery request to the State." *Pl.'s Mot. to Continue* at 1. Mr.

Gilbert's motion says, in its entirety:

> I, [t]he Plaintiff, ask the court to continue this case involving the State not getting (me) the 2022 November election ballot []for the reason of a Discovery request to the State.
>
> The Discovery request asks the State to supply information surrounding the staff working on the Lower Kennebec unit [at] the time the Plaintiff was there in the fall of 2022.
>
> There's a request for the medical records of the Plaintiff from Riverview for the time he was there as well.
>
> This Motion to Continue should be granted based on the fact that the Plaintiff feels the truth of what happened and the internal investigation findings by Riverview do not align. With information of the staff and from the staff, a new discovery could occur in regards to discrimination based on the Plaintiff's disability.

*Id.* at 1.

### B.    Discussion

By the Court's reckoning, Mr. Gilbert's self-titled motion to continue is, in

practical effects, a motion requesting an order of discovery and a motion to continue

the Court's resolution of his case pending completion of such discovery. However, "a

plaintiff can open the door to discovery only if []he first alleges 'enough fact[s] to raise

a reasonable expectation that discovery will reveal evidence' of actionable

misconduct." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007)). In other words, "a plaintiff must state a

plausible claim before []he can invoke a right to discovery." *Id.*

Because the First Circuit has definitively held there is no automatic right to

discovery, the Court addresses Mr. Gilbert's motion seeking such relief only after

reviewing his motion to amend and the Defendants' motion to dismiss. This is for several reasons. First, in regards the motion to dismiss, the Court is bound in ruling on that motion to consider only the factual record presented in Mr. Gilbert's amended complaint, in the light most favorable to him, and Mr. Gilbert has argued in opposing the motion to dismiss that the same amended complaint as it currently stands is sufficient to defeat dismissal. The Court already concluded in this order that Mr. Gilbert's amended complaint does survive the Defendants' motion to dismiss. Thus, Mr. Gilbert's request for discovery has no bearing on the Court's determination of the motion to dismiss.

Second, because "a plaintiff must state a plausible claim before []he can invoke a right to discovery," it would be "put[ting] the cart before the horse" to rule on the motion to continue before addressing whether Mr. Gilbert's proposed second amended complaint states a "plausible claim." *See id.* (citing *García-Catalán v. United States*, 734 F.3d 100, 105 (1st Cir. 2013)). Here, the Court denied Mr. Gilbert's motion to amend on the grounds that doing so would be futile.

Considering a similar scenario, the First Circuit held a plaintiff was not entitled to discovery to bolster an amended complaint that did not plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of actionable misconduct." *Id.* (quoting *Twombly*, 550 U.S. at 556). The *Parker* Court explained, "[t]he assertion of a need for discovery does not trump the plausibility requirement: a plaintiff must state a plausible claim before she can invoke a right to discovery." *Id.* Determining that the amended complaint in that case did not "set

41

forth facts sufficient to create a reasonable expectation that discovery would be anything more than a shot in the dark," the First Circuit concluded it would not "unlock the doors of discovery." *Id.* at 19 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In line with this precedent, the Court reaches the same conclusion here. Having already determined Mr. Gilbert's First Amendment claim stated within his second amended complaint does not plead a plausible claim to relief, the Court determines he does not have the right to "unlock the doors of discovery." *Id.* The Court accordingly dismisses Mr. Gilbert's motion to "continue this case . . . for the reason of a Discovery request." *Pl.'s Mot. to Continue* at 1.

## V.    CONCLUSION

The Court DISMISSES without prejudice Motion to Dismiss of Defendant Department of Health and Human Services (ECF No. 17), Dustin Graham Gilbert's Motion to Amend (ECF No. 16), and Dustin Graham Gilbert's Motion for Continuance [B]ased on Discovery Request to the Defendant (ECF No. 22).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of April, 2025

42